employments, which was in no way incident to a hazardous employment, was entitled to compensation.

The word "employé" as defined in section 3, subd. 4 (prior to the amendment of 1916), "means a person who is engaged in a hazardous employment in the service of an employer carrying on or conducting the same. * * *" Section 2 of the Workmen's Compensation Law awards compensation to employés "engaged in the following hazardous employments"; and this right of compensation concededly extended to an employment which was an incident to a hazardous employment. That the injury must have arisen out of a hazardous employment, or in other words have been sustained while the employé was engaged in a hazardous employment, or in an employment incident to a hazardous employment, in order to justify making an award, has been held in several cases, among others Matter of Newman v. Newman, 113 N. E. 332 (decided June 6, 1916, 169 App. Div. 745, 155 N. Y. Supp. 665; Matter of Mihm v. Hussey, 169 App. Div. 742, 155 N. Y. Supp. 860; Gleisner v. Gross & Herbener, 170 App. Div. 37, 155 N. Y. Supp. 946; Sickles v. Ballston Refrigerating Storage Co., 171 App. Div. 108, 156 N. Y. Supp. 864.

The decision of the commission should be reversed, and the award vacated. All concur.

---

(174 App. Div. 327)

MERCHANTS' LINE v. WALSH CONST. CO.

(Supreme Court, Appellate Division, Third Department.   September 13, 1916.)

1. EMINENT DOMAIN ⊜⟹295—ACTIONS—BURDEN OF PROOF.
    Where plaintiff erected a derrick at the end of a dock which the state had condemned for a terminus for a barge canal, plaintiff had the burden of proving that defendant, a state contractor, acted wrongfully in removing the derrick.

    [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 803; Dec. Dig. ⊜⟹295.]

2. EMINENT DOMAIN ⊜⟹295—PRESUMPTIONS—TRESPASS.
    Where a state contractor removed a derrick erected at the end of a wharf which the state had condemned to furnish a terminus for a barge canal, there is no presumption that the state did not take the proper steps to acquire the dock and was a mere trespasser.

    [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 803; Dec. Dig. ⊜⟹295.]

3. EMINENT DOMAIN ⊜⟹307(2)—ACTIONS—EVIDENCE—JURY QUESTIONS.
    In an action against a state contractor for conversion of a derrick placed by defendant at the end of a dock condemned by the state to afford a terminus for a barge canal, the question of the amount of plaintiff's loss held under the evidence for the jury.

    [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 823; Dec. Dig. ⊜⟹307(2).]

Appeal from Trial Term, Rensselaer County.

Action by the Merchants' Line against the Walsh Construction Com-

pany. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Reversed and remanded.

Argued before KELLOGG, P. J., and LYON, HOWARD, WOODWARD, and COCHRANE, JJ.

Visscher, Whalen & Austin, of Albany (J. Harris Loucks, of Albany, of counsel), for appellant.

James Farrell, of Troy, for respondent.

LYON, J. In the fall of 1912 the state of New York in pursuance of chapter 746, Laws 1911, sought to appropriate for a barge canal terminal a portion of the Adams street dock in the city of Troy, N. Y. The dock was owned by the Boston & Maine Railroad. A portion of it had been leased by the railroad in 1902 to Edward F. Murray for the term of 25 years under the condition that Murray should not underlet any part of the leased premises without the written consent of the lessor, and subject to the right of either party to terminate the lease on giving 2 years' notice in writing. In September, 1912, proceedings were taken by the state engineer and the canal board by which the river end of the dock was permanently appropriated for use as a canal terminal. In October, 1912, the superintendent of public works caused to be personally served upon the Boston & Maine Railroad a notice of appropriation, together with a map and description of the property appropriated, pursuant to section 8 of said Laws, which provided that:

"From the time of the service of such notice, the entry upon, and the appropriation by the state of the property described for the purposes above described, shall be deemed complete, and such notice so served shall be conclusive evidence of such entry and appropriation and of the quantity and boundaries of the property appropriated."

In October, 1912, the state also caused a duplicate of said notice, map, and description, with an affidavit of such service to be filed in the office of the clerk of Rensselaer county. Apparently the purpose of such act was to comply with the provisions of said section 8 as to unknown owners, and owners upon whom the superintendent of public works was not able in his judgment, after making reasonable and proper efforts so to do, to serve such notice personally. The act specifies no other reason for such filing. So far as the record discloses, no personal service of said notice, map, and description was made upon said Murray or upon the plaintiff. Upon the map of the property appropriated was the following statement:

"This appropriation covers merely lands, buildings, and other structures; all fixtures, machinery, or appurtenances which may be deemed as fairly removable remain the property of the owner and are subject to his disposition."

In March, 1913, a notice to vacate was served by the state engineer and surveyor's office upon the Boston & Maine Railroad, stating that in the performance of the construction work of the terminal possession would be required May 1, 1913. The notice stated that it was given, not as a matter of necessity, but to notify the occupants of the exact date when possession would be required and to cause the occu-

pant as little inconvenience as possible. In April, 1913, the plaintiff obtained from said Murray verbal permission to locate a derrick upon the portion of the dock appropriated, to replace a derrick, the date of the erection of which was not shown, which had belonged to the plaintiff, and which had been washed away in the spring of 1913. It does not appear that the license was for any fixed term. During the same month the plaintiff erected the derrick, the alleged conversion of which by the defendant has given rise to this action.

In January, 1914, the defendant entered into a contract with the state for the construction of the terminal, and in the latter part of March, 1914, entered upon the work of construction. In June, 1914, the work had reached a point where it was necessary that the derrick be removed in order that the work might continue. The derrick consisted of an oak mast about 40 feet in height, having a diameter of 26 inches at the butt and 16 inches at the top. It was set 8 feet into the ground, braced at the bottom, supplied with a boom and the necessary blocks and fittings, and stayed by two guy cables extending from the top of the mast to the ground. On June 28th defendant's foreman, after consultation with the assistant engineer of the state engineer's department, who was overseeing the construction of the terminal, directed the men in the employ of the defendant to cut the mast down, which they did. The derrick was then rolled out of the way of the work. Its subsequent disposition is not disclosed by the evidence. Whether notice was given to the plaintiff to remove the derrick previous to the day of its destruction was the subject of much contradictory testimony. However, the preponderance of evidence was strongly in favor of the defendant's contention that the plaintiff was repeatedly notified to remove it in ample time to have done so before it was reached in the construction work and cut down.

Plaintiff's principal office and place of business was in the city of Troy. Its president and manager resided there. He testified that he had been informed prior to the time he erected the second derrick that the state had fixed upon the Adams street dock as the canal terminal. He also testified that, although he knew of a contract having been made by the defendant with the state for the construction of the terminal, from which he must have assumed that the state had acquired title to the property, and knew that the work of construction was going on, and although the plaintiff used the derrick in its work of transferring freight between cars and boats up to about April 1, 1914, yet that the plaintiff did not take any steps to learn how the work was progressing towards the derrick. So far as appears, the plaintiff never claimed any right to have the derrick remain, or asked any delay in removing it, or made any offer to remove it. Its officers apparently considered not removing it, to be for the interests of the plaintiff.

[1, 2] The lease from the railroad to Murray was never placed upon record, and so far as appears there was no open and notorious possession upon the part of either Murray or the plaintiff, which would put the state upon inquiry at the time of making the appropriation as to whether either was in possession of any portion of the dock property. In fact, it may be said the record contains no satisfactory evi-

dence that the lease was unrevoked and in force in the fall of 1912, or at the time of the alleged conversion of the derrick. Any right of possession which the plaintiff had was wholly dependent upon the right of possession of Murray as lessee. Plaintiff makes no claim of ever having acquired any right from the state to erect the derrick. Had notice of appropriation been served upon Murray in the fall of 1912, or the state have otherwise acquired his rights, the plaintiff, in erecting its derrick in April, 1913, was a trespasser, and subject to treatment as such. The burden of proof was upon the plaintiff, yet Murray was not called to testify, nor his absence accounted for. Manifestly Leslie could not know whether Hotaling, the deceased process server, had served notice upon Murray or not. His whole testimony was necessarily limited to the fact that the papers which he had from the state department of public works, and the affidavits which were on file in the state comptroller's office, which he did not have, did not contain any affidavit of service upon Murray. Certainly, no presumption operated in plaintiff's favor that the state was a trespasser by reason of having failed to do the necessary acts making the appropriation complete and entitling it to take possession of the property, and through its contractor construct the terminal.

[3] The court assuming that the appropriation was not complete as to the plaintiff, directed a verdict against the defendant for $250. Concededly the defendant is entitled upon this appeal to every reasonable inference in its favor which can be drawn from the evidence. The only testimony as to the value of the derrick was that of plaintiff's president and manager to the effect that the cost of the derrick and fittings was about $200, and that the plaintiff paid $50 for labor. The defendant has assumed in his brief, and the assumption finds support in the evidence, that the latter sum included not only the cost of the derrick with its fittings, but also included the expense of placing the derrick. Manifestly a derrick which had been exposed to the weather and had been in use for a year was of less value than when new. Plainly, too, the derrick was then or would soon become the subject of removal, which would apparently require that it be cut down, reducing it to a 30-foot derrick, or that the earth be removed, the mast released from its anchorage at the base, and the derrick be then taken down. Whether in fact the practical way for the plaintiff to have removed the derrick would not have been to cut it down does not appear, and is probably not material upon this appeal. It was at least for the jury, as men of practical experience and common sense, to say in what amount the plaintiff had been damaged by the alleged conversion of the derrick.

The judgment and order appealed from should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur; KELLOGG, P. J., in result.